IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FREDRICK R. BACA,

      Plaintiff,

v.                                        Civ. No. 19-570 KWR/GBW

CLOVIS POLICE DEPARTMENT, *et al.*,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me on Defendants' Martinez Report (*doc. 31*),

pursuant to the Court's Order of Reference (*doc. 15*). Defendants request that the Court

grant summary judgment in their favor based on the facts contained in their *Martinez*

Report and related exhibits. *Doc. 31* at 1. Having reviewed the *Martinez* Report and the

attendant briefing (*doc. 33, 34*), I recommend GRANTING summary judgment to

Defendants.

I.    BACKGROUND

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, initiated the present

suit on June 17, 2019, asserting claims pursuant to 42 U.S.C. § 1983. *Doc. 1*. On July 20,

2020, the Court filed an Order Directing Amendment, requiring Plaintiff to clarify the

scope of his claims and to use the Court's official § 1983 form complaint. *Doc. 10*. On

September 21, 2020, Plaintiff filed his Amended Complaint. *Doc. 13*. Count I of the

Amended Complaint raises claims of excessive force, discrimination, and profiling. *Id.*
at 4. In Count II, Plaintiff raises a claim of "breach of duty as a first responder." *Id.* at 4.

On October 20, 2020, the Court filed a Memorandum Opinion and Order
reviewing Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e). *Doc. 14*.
Liberally construing the Amended Complaint, the Court determined that Count I raises
a claim under federal law pursuant to 42 U.S.C. § 1983 while Count II raises a claim
under state law. *Id.* at 5–6. The Court dismissed all claims against an unnamed
emergency medical technician, Plains Regional Medical Center, and Karla Garcia
Espinosa, finding that Plaintiff had failed to allege that these Defendants were state
actors subject to § 1983 and declining to exercise supplemental jurisdiction over any
state law claims against them. *Id.* at 4–6. The Court determined that the claims against
Defendants City of Clovis (standing in for the Clovis Police Department) and Timo
Rosenthal (an officer with the Clovis Police Department) should proceed. *Id.* at 3.

On April 8, 2021, upon a motion to dismiss, the federal claims in Count I were
dismissed as to Defendant City of Clovis. *Doc. 29*. On April 13, 2021, I ordered
Defendants to investigate the claims in Plaintiff's Amended Complaint and submit a
report of their findings pursuant to *Martinez v. Aaron*, 570 F.2d 317, 320 (10th Cir. 1978).
*Doc. 30*. I ordered Defendants to file their *Martinez* Report and any motion for summary
judgment by May 13, 2021. *Id.* at 3–4. I ordered Plaintiff to file a response to the
*Martinez* Report and any motion for summary judgment within thirty days of

Defendants' filing.  *Id.* at 4.  I ordered Defendants to file any reply within fourteen days of Plaintiff's response.  *Id.*  On May 13, 2021, Defendants timely filed their *Martinez* Report, which they ask the Court to construe as a motion for summary judgment.  *Doc. 31.*

On June 28, 2021, Plaintiff filed his response, fourteen days after his deadline. *Doc. 33.*  Plaintiff has also filed a letter to the Court, stating that his response was withheld by prison officials due to his failure to pay postage.  *Doc. 35.*  I construe Plaintiff's letter as a request to extend his time to respond for good cause and excusable neglect.  *See* Fed. R. Civ. P. 6(b)(1)(B).  Plaintiff explains that he believed he was not required to pay postage as he is proceeding *in forma pauperis*.  *Doc. 35* at 1.  The *in forma pauperis* statute, 28 U.S.C. § 1915, permits a plaintiff to bring "any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor."  28 U.S.C. § 1915(a)(1).  This statute does not prevent prison officials from charging a prisoner the ordinary cost of postage.  *See, e.g., Twyman v. Crisp*, 584 F.2d 352, 358–59 (10th Cir. 1978).  Although Plaintiff's delay in filing a timely response was due to his own mistaken understanding, I will GRANT an extension and accept Plaintiff's belated filing.  In considering Plaintiff's request, I note that Plaintiff dated his response as of June 10, 2021, *doc. 33* at 9, and internal Court records show that Plaintiff called the clerk's office on or about June 15, 2021, to inform the Court of this issue.  Thus, I find

that Plaintiff attempted to file a timely response and should not be penalized for his mistake.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

Notably, however, summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  This is a

4

"strict two-part test" that must be met before the defendant asserting qualified

immunity again "bear[s] the traditional burden of the movant for summary judgment—

showing that there are no genuine issues of material fact and that he or she is entitled to

judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008)

(quoting *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).  The Court may

address the two prongs of the test in any order.  *Pearson*, 555 U.S. at 236.

"Ordinarily, in order for the law to be clearly established, there must be a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

authority from other courts must have found the law to be as the plaintiff maintains."

*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (citation omitted).  While it is not

necessary to identify a case with identical facts, "existing precedent must have placed

the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S.

731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), and *Malley v.

Briggs*, 475 U.S. 335, 341 (1986)).  The Supreme Court has repeatedly admonished courts

"not to define clearly established law at a high level of generality." *City of Escondido v.

Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

General principles "do not by themselves create clearly established law outside 'an

obvious case.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2018) (quoting *Brosseau v. Haugen*, 543

U.S. 194, 199 (2004)).  The dispositive question is whether the "right's contours were

sufficiently definite that any reasonable official in the defendant's shoes would have

5

understood that he was violating it." *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).

In determining whether the plaintiff has met his or her burden to overcome a qualified immunity defense, the Court construes the facts in the light most favorable to the plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). In so doing, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–54 (1999). Third, the Court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257. Nonetheless, at the summary judgment stage, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

III.   **UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, any party wishing to assert a statement of fact must support that assertion with citations to evidence in the record.  Fed. R. Civ. P. 56(c)(1).  In response, a party wishing to dispute any statement of fact asserted by the opposing party must either cite to evidence in the record showing a genuine dispute as to that fact or show that the evidence cited by the opposing party does not establish the absence of a genuine dispute.  *Id*.  If a nonmovant fails to dispute a statement of fact asserted by the movant, the Court may "consider the fact undisputed" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

Where the nonmovant is proceeding *pro se*, the Court must liberally construe his filings to make allowances for his "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  This liberal construction does not, however, permit a *pro se* plaintiff to depart from "the same rules of procedure that govern other litigants."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  When a plaintiff fails to comply with an applicable rule of procedure—such as Rule 56—the Court cannot "fill the void by crafting arguments" for him.  *Id.* at 841

(quoting *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)); *see also Hall*, 935 F.2d at 1110 (noting that the Court should not "assume the role of advocate for the pro se litigant").

Plaintiff fails to properly dispute the statements contained in Defendants' Statement of Undisputed Materials Facts.  He objects to Defendants' reliance on video evidence that he was unable to review for himself.  *See doc. 33* at 2–3.  However, he does not articulate any dispute as to Defendants' statements based on the video evidence.  *See id.* at 6–8.  If Plaintiff wished to assert that the video evidence is in some way misleading or inaccurate, then it was incumbent on him to identify which facts as stated by Defendants are disputed.  Plaintiff failed to do so.

Because Plaintiff failed to dispute them, I adopt Defendants' Undisputed Material Facts to the extent that they are supported by evidence in the record and not clearly contradicted by the video footage.  *See Scott*, 550 U.S. at 379–81.  Accordingly, I find the following facts to be undisputed:

1.      On the night of January 4, 2019, officers of the Clovis Police Department, including Defendant Rosenthal, were working at a D.W.I. checkpoint in Clovis, New Mexico.  UMF 1–2[1]; Defs.' Ex. B (mp4 file labeled *19-0075 1*) ("Lapel Video Pt. 1").

2.      Near midnight, Defendant Rosenthal saw Plaintiff in the passenger side of a

---

[1] The citation "UMF __" refers to the respective Undisputed Material Fact(s) listed in Defendants' Martinez Report, *doc. 31* at 4–6.

stopped vehicle and recognized him as a former inmate at the Curry County Adult Detention Center, where Defendant Rosenthal was previously employed.  UMF 3–4; Lapel Video Pt. 1 at 01:34–01:40.

3.      Defendant Rosenthal knew that there was an outstanding warrant for Plaintiff's arrest.  UMF 5; *doc. 34-1* at 4.

4.      Defendant Rosenthal approached the passenger side of the vehicle, opened the door, and stated, "Fredrick Baca, go step out the vehicle."  UMF 6; Lapel Video Pt. 1 at 01:40–01:46.

5.      Plaintiff denied that his name was Fredrick Baca.  UMF 8; Lapel Video Pt. 1 at 01:45–01:47.

6.      Defendant Rosenthal informed Plaintiff that he recognized him from the Curry County Adult Detention Center and ordered him to step outside the vehicle.  UMF 9; Lapel Video Pt. 1 at 01:47–01:54.

7.      Plaintiff again denied that his name was Fredrick Baca.  UMF 10; Lapel Video Pt. 1 at 01:54–02:02.

8.      After Defendant Rosenthal ordered Plaintiff twice more to step out of the vehicle, Plaintiff exited the vehicle.[2]  UMF 11, 13, 14; Lapel Video Pt. 1 at 01:56–02:07.

---

[2] Plaintiff contends that Defendant Rosenthal forcibly removed him from the vehicle.  *Doc. 33* at 1. Plaintiff neither provides evidence to support this contention nor addresses Defendants' statement that he stepped out of the vehicle after being ordered to do so.  Furthermore, as this contention is clearly contradicted by the video evidence, it is not a matter of genuine dispute.  *See Scott*, 550 U.S. at 380.

9.      Defendant Rosenthal informed Plaintiff that he had an outstanding arrest warrant, and Plaintiff began to run.  UMF 14–16; Lapel Video Pt. 1 at 02:05–02:12.

10.     Defendant Rosenthal ran after Plaintiff.  As he caught up with Plaintiff, he pushed Plaintiff's upper body, causing Plaintiff to fall to the ground and causing himself to trip over Plaintiff.  UMF 17–18; *doc. 34-1* at 4; *doc. 33* at 10.

11.     Other officers arrived and placed Plaintiff in handcuffs while Plaintiff complained of pain.  UMF 19; Lapel Video Pt. 1 at 02:20–02:40.

12.     Approximately one-and-a-half minutes later, Plaintiff began to request an ambulance.  UMF 20; Lapel Video Pt. 1 at 04:00–04:04.

13.     Within thirty seconds, an unidentified officer called for an ambulance.  UMF 21; Lapel Video Pt. 1 at 4:20–4:35.

14.     Meanwhile, Defendant Rosenthal called dispatch to confirm the outstanding warrants, supplying Plaintiff's birthdate[3] and confirming the last four digits of Plaintiff's social security number.  Lapel Video Pt. 1 at 4:45–5:00, 07:54–08:04.

15.     Dispatch confirmed three outstanding warrants for Plaintiff[4] for failure to appear

---

[3] I presume that Plaintiff's correct birthdate is the one listed on the medical records that he attached to his response.  *See doc. 33* at 10.

[4] Plaintiff argues that Defendants could not be certain that these warrants related to him "because the birthdates were inconclusive."  *Doc. 33* at 7.  This argument is based on two facts: (1) Defendants initially presented a copy of Defendant Rosenthal's police report with Plaintiff's birthdate redacted, *see doc. 31-1* at 1; and (2) the police report noted that one of the warrants was associated with an incorrect birthdate, *see id.* at 4.  In their reply, Defendants presented an unredacted version of the police report, which shows that one warrant had inverted the day and month of Plaintiff's birthdate.  *See doc. 34-1* at 4.  The police report notes that "the other identifiers matched."  *Id.*  Plaintiff argues that "other identifiers" is too vague to establish that the warrant was associated with him.  *Doc. 33* at 6–7.  The meaning of "other identifiers" is

at a June 2018 hearing in a then-pending criminal case against him, Case No. D-905-CR-2018-00274, as well as for charges in two cases, both initiated in November 2018, Case Nos. M-12-FR-201800555 & M-12-VF-201800037.[5]  UMF 28; *doc. 34-1* at 4; Lapel Video Pt. 1 at 07:50–08:50.

16.     Upon confirming outstanding warrants for Plaintiff, Defendant Rosenthal formally placed Plaintiff under arrest.  Lapel Video Pt. 1 at 08:02–08:25.

17.     An ambulance arrived approximately seven minutes after it was called.  UMF 23; Lapel Video Pt. 1 at 10:00–11:30.

18.     The EMTs assessed Plaintiff and released him back to Defendant Rosenthal. UMF 25–26; Defs.' Ex. C (mp4 file labeled *19-0075 2*) ("Lapel Video Pt. 2").

19.     A little after 1:00 a.m. on January 5, 2019, Defendant Rosenthal transported Plaintiff to the hospital, where Plaintiff underwent x-rays and was diagnosed with a Grade 3 acromioclavicular joint separation but no fracture.  *Doc. 33* at 10, 14.

20.     After being discharged from the hospital, Plaintiff was booked on charges arising from his arrest as well as the outstanding warrants relayed by dispatch.  *Doc. 34-1* at 4.

21.     Subsequently, Plaintiff underwent surgery to have a metal plate and screws placed on his right clavicle and was diagnosed with post-traumatic stress disorder.  *Doc.*

---

entirely clear from the police report, which notes that the warrants were a match for Plaintiff's "last four of the social, eye color, height, weight, and hair color."  *Doc. 34-1* at 4.

[5] I take notice of the publicly available records in these court cases pursuant to Federal Rule of Evidence 201.  *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (permitting judicial notice of "proceedings in other courts" as relevant).

*33* at 21, 26.

IV.   ANALYSIS

A.   <u>Excessive Force</u>

The constitutionality of police officers' use of force in effecting an arrest is

analyzed under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  In

*Graham*, the Supreme Court laid out an objective test for determining whether an

officer's use of force constitutes an unreasonable seizure in violation of the Fourth

Amendment.  *Id.* at 397.  "The 'reasonableness' of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight."  *Id.* at 396.  The inquiry must make allowances "for the fact

that police officers are often forced to make split-second judgments—in circumstances

that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation."  *Id.* at 397.  Factors for consideration are "the

severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting

to evade arrest by flight."  *Id.* at 396.

The record does not establish (and Defendants do not argue) that the first two

*Graham* factors support Defendant Rosenthal's use of force.  There is no evidence

concerning what Defendant Rosenthal knew or reasonably believed about the

underlying charges for which Plaintiff had outstanding warrants.  The offense that

12

Defendant Rosenthal observed Plaintiff committing—resisting, evading, or obstructing an officer—is a misdemeanor.  *See* N.M. Stat. Ann. § 30-22-1.  Thus, there is no basis to find that any offense involved here was severe.  *See Herrera v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 361 F. App'x 924, 928 (10th Cir. 2010) (unpublished) (violation of § 30-22-1 not "severe" under *Graham*).  Additionally, there is nothing in the record to suggest that Plaintiff posed an immediate threat to officers' or others' safety.   The sole question in this case, then, is whether Defendant Rosenthal's use of force was reasonable based solely on the fact that Plaintiff was attempting to evade arrest by flight.  I find that it was.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion . . . to effect it."  *Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).  The Fourth Amendment does not require officers to deploy "the least intrusive means" to effect an arrest or detention but "only reasonable ones."  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005).  "The Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture."  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007).  While some degree of force is reasonable to prevent evasion, an officer's use of force may become unreasonable if it continues after an arrestee has stopped fleeing.  *See McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018)

13

(collecting cases finding that initial force to stop a resisting arrestee is reasonable but continued force after an arrestee is subdued may be excessive).

The undisputed material facts are as follows: (1) Defendant Rosenthal informed Plaintiff of a warrant for his arrest, and Plaintiff responded by running; (2) Defendant Rosenthal gave chase and, upon reaching Plaintiff, pushed at Plaintiff's upper body; (3) Plaintiff fell to the ground and Defendant Rosenthal tripped over him; and (4) no further force was used against Plaintiff.  These undisputed facts show that Defendant Rosenthal's use of force was for the limited purpose of stopping Plaintiff's flight and ended as soon as that purpose was accomplished.  The use of force in this case was reasonable under the circumstances.

Plaintiff's argument for finding excessive force here rests almost entirely on the seriousness of his injury.  *See doc. 33* at 7.  The seriousness of a plaintiff's injury alone cannot establish a genuine dispute of material fact.  *See Culver v. Town of Torrington*, 930 F.2d 1456, 1461 (10th Cir. 1991) (finding that evidence of the severity of an injury is insufficient to preclude summary judgment).  Moreover, the seriousness of the injury cannot establish *unreasonable* force as determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  Based on the "rapidly evolving" events that Defendant Rosenthal faced, *see id.*, his use of force was reasonable even if he might have misjudged the precise amount of

14

force necessary to stop Plaintiff's flight.[6]  Under these circumstances, Defendant

Rosenthal's use of force was not unreasonable under the Fourth Amendment.

Although the Court construed Plaintiff's excessive-force claim as stating a claim

under federal law, Plaintiff's response cites the New Mexico Tort Claims Act

("NMTCA") and New Mexico case law.  *See doc. 33* at 3.  Accordingly, I will also

analyze this claim under state law.  That analysis leads to the same result.

A state-law claim for battery against an officer attempting to effect an arrest is

subject to the same analysis as a claim for excessive force.  *Park v. Gaitan*, 680 F. App'x

724, 744 (10th Cir. 2017) (unpublished).  In New Mexico, officers may use "necessary

force" to effect an arrest or prevent an escape.  *New Mexico v. Kraul*, 563 P.2d 108, 112

(N.M. Ct. App. 1977).  "Officers, within reasonable limits, are the judges of the force

necessary to enable them to make arrests," and "the courts will afford them the utmost

protection" when acting in good faith.  *Mead v. O'Connor*, 344 P.2d 478, 479–80 (N.M.

1959).  Reminiscent of *Graham*'s warning against 20/20 hindsight, the New Mexico

Supreme Court has "recognize[d] the fact that emergencies arise when the officer

cannot be expected to exercise that cool and deliberate judgment which courts and

juries exercise afterwards upon investigations in court."  *Id.* at 480.  New Mexico differs

slightly from the federal standard in holding that the reasonableness of the officer's use

---

[6] The fact that Defendant Rosenthal tripped over Plaintiff's body suggests that he did not expect to take Plaintiff to the ground, let alone cause a serious injury.

of force is a question for the jury. *Alaniz v. Funk*, 364 P.2d 1033, 1035 (N.M. 1961).

However, where "the minds of reasonable men could not differ under the

circumstances as they appeared to the defendant at the time," the Court may find the

use of force reasonable as a matter of law. *Id.* (affirming directed verdict in defendant's

favor following shooting death of arrestee). In making such a finding, the Court must

remember that not "every arrest or attempted arrest can be effected with theoretical

perfection." *Id.*

Under the circumstances presented here, Defendant Rosenthal had to respond

quickly to the sudden flight of an arrestee. As previously stated, regardless of the

seriousness of the injury that resulted, Defendant Rosenthal's use of force was

reasonable even if he theoretically could have prevented Plaintiff's evasion with less

force. Under both federal and state standards, Defendant Rosenthal did not use

excessive force in preventing Plaintiff's evasion from arrest.

### B. Discrimination and/or Profiling

In addition to asserting excessive force, Plaintiff's first cause of action includes

allegations that Defendant Rosenthal "discriminate[d] against [Plaintiff] because he

knew him previously" and "profile[d] [Plaintiff] because he looked like someone he

knew." *Doc. 13* at 4. In his response to the *Martinez* Report, Plaintiff further contends

that Defendant Rosenthal "had it out for him because of incidents that occurred at the

16

Curry County Detention Center."  *Doc., 33* at 6.  Plaintiff does not describe these "incidents."

Liberally construed, these allegations might conceivably state a claim for unlawful seizure.  *See, e.g., Jones v. Hunt*, 410 F.3d 1221, 1227 (10th Cir. 2005) (officers must have a warrant or probable cause to effect an arrest).  That is to say, if Defendant Rosenthal had arrested Plaintiff solely because he recognized him as a former prisoner and not because he had any reason to believe Plaintiff had been or was committing a crime, then such arrest would be without probable cause.  Conversely, neither Defendant Rosenthal's prior acquaintance with Plaintiff nor his allegedly retaliatory motive would provide a basis to challenge this arrest if it was supported by probable cause.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.").

The evidence in the record shows that Plaintiff's arrest was based not on Defendant Rosenthal's prior history with Plaintiff but on Defendant Rosenthal's knowledge of one or more outstanding warrants for Plaintiff's arrest, which Defendant Rosenthal confirmed before officially placing Plaintiff under arrest.  While their prior history allowed Defendant Rosenthal to recognize Plaintiff, it was not the basis for probable cause for Plaintiff's arrest.  As to the warrants on which Plaintiff's arrest was based, Plaintiff does not contend that they were facially invalid such that Defendant

17

Rosenthal was not entitled to rely on them.  *See, e.g., Hill v. Bogans*, 735 F.2d 391, 393

(10th Cir. 1984) ("Unless a warrant is facially invalid an officer has no constitutional

duty to independently determine its validity.").

Plaintiff attempts to challenge the identification of these warrants to himself

based on the inaccurate birthdate associated with one of them.  *See supra* n.4.  This

argument fails.  First, an officer is entitled to rely in good faith on a facially valid

warrant even if there is a mistake as to the correct identity of the person to be arrested.

*See Baker v. McCollan*, 443 U.S. 137, 143–44 (1979); *Hill v. California*, 401 U.S. 797, 802–03

(1971).  Second, a single valid arrest warrant is all that is required to establish probable

cause for an arrest.  *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir.

2006).  Based on the evidence in the record, two of the warrants were associated with

Plaintiff's correct birthdate, and all of the warrants matched Plaintiff's partial social

security number and physical description.  There is no basis to find that Plaintiff's arrest

was unlawful due to misidentification.

All possible theories of liability raised in Plaintiff's first cause of action fail.

Accordingly, I recommend that the Court grant summary judgment in Defendants'

favor and dismiss Plaintiff's first cause of action with prejudice.

### C. Failure to Provide Medical Care

Plaintiff's second cause of action is styled "duty of the breach of first responder."

*Doc. 13* at 4.  Insofar as this cause of action is brought against Defendants, Plaintiff

alleges that Defendant Rosenthal "ignored [Plaintiff's] complaints of pain to his right arm and shoulder and failed to offer due care." *Doc. 13* at 4.  The Court opined that Plaintiff intended this cause of action to raise "state claims for common law negligence and/or violation of the New Mexico Tort Claims Act based on the medical care he received after his arrest." *Doc. 14* at 5.

As Defendant Rosenthal was acting within the scope of his duties as a law enforcement officer, Plaintiff must establish that there is an applicable waiver of his immunity under the NMTCA.  Constitutional violations provide one such waiver. N.M. Stat. Ann. § 41-4-12 (waiving immunity for the "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico"); *see Wells v. Valencia Cnty.*, 644 P.2d 517, 520 (N.M. 1982).  Negligence, standing alone, does not.  *Dickson v. City of Clovis*, 242 P.3d 398, 403 (N.M. Ct. App. 2010).  In his response, Plaintiff asserts violations of his rights under the Fifth and Eighth Amendments to the U.S. Constitution, arising from Defendant Rosenthal "leaving [him] on the ground without offering due care." *Doc. 33* at 4.  I therefore presume that Plaintiff intended to assert constitutional violations under this cause of action.

The Eighth Amendment's proscription against cruel and unusual punishments applies only where there is a "formal adjudication of guilt." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Because the incident at issue in this case occurred before

any formal adjudication of guilt, the Eighth Amendment does not apply.  The Due

Process Clause of the Fourteenth Amendment may afford relief to an arrestee who is

injured during apprehension and does not receive medical attention.  *Id.* at 244–45.  An

officer satisfies his constitutional obligation by seeing that an arrestee receives prompt

medical care when necessary.  *Id.* at 245.

In the Tenth Circuit, the standard under the Fourteenth Amendment is the same

as that under the Eighth Amendment and requires a showing of deliberate indifference

to the plaintiff's serious medical needs.  *See, e.g., Barrie v. Grant Cnty.*, 119 F.3d 862, 867

(10th Cir. 1997).  "Deliberate indifference involves both an objective and a subjective

component."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation

marks and citation omitted).  Under the objective component, a claim based on delay in

providing medical care requires showing "that the delay resulted in substantial harm."

*Id.* at 1210.  The subjective component requires evidence of the defendant's "culpable

state of mind."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The undisputed evidence shows that an ambulance was called within three

minutes after Plaintiff fell and thirty seconds after Plaintiff requested one.  After

Plaintiff was assessed by the EMTs, Defendant Rosenthal took him to the hospital,

where he was seen by a doctor and taken for x-rays.  Defendant Rosenthal satisfied his

constitutional obligation to see to Plaintiff's medical needs without substantial delay.

Furthermore, any alleged negligence by the medical professionals who assessed

Plaintiff's condition does not establish liability on the part of Defendant Rosenthal.  *See,*
*e.g.*, *Mata*, 427 F.3d at 751 ("Where the necessity for treatment would not be obvious to a
lay person, the medical judgment of the physician, even if grossly negligent, is not
subject to second-guessing in the guise of [a constitutional claim]."); *Wilson v. Meeks*, 52
F.3d 1547, 1556–57 (10th Cir. 1995) (noting that medical care is best left to qualified
medical personnel, not police officers).  Based on the undisputed facts, Defendant
Rosenthal did not violate Plaintiff's due-process right to medical care.

Because Plaintiff has not established any basis to find that Defendant Rosenthal
committed a constitutional violation against him, his claim against Defendant City of
Clovis also fails.  *See Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 734 P.2d 794, 799
(N.M. Ct. App. 1987) (noting that an action against a governmental entity under the
NMTCA requires a governmental employee whose conduct falls under a waiver of
immunity).

Because Plaintiff has not established a genuine dispute of fact that would permit
a factfinder to conclude that either Defendant committed any constitutional violation, I
recommend that the Court grant summary judgment to Defendants and dismiss this
case.  To the extent that Plaintiff's Amended Complaint can be construed to raise any
state claims other than constitutional violations, I recommend that the Court decline to
exercise supplemental jurisdiction over them and dismiss them without prejudice to
Plaintiff refiling them in state court.

V.    CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT summary

judgment in Defendants' favor and DISMISS WITH PREJUDICE all federal and state

constitutional claims and DISMISS WITHOUT PREJUDICE any state claims other than

constitutional claims in Plaintiff's Amended Complaint (*doc. 13*).


_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of
a copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party
must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be
allowed.**